UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ALFRED DERISCHEBOURG**                                      **CIVIL ACTION**

**VERSUS**                                                             **NO. 15-1712**

**CHRIS CLARK, ET AL.**                                        **SECTION I**

### ORDER AND REASONS

The Court has pending before it a motion[1] to dismiss filed by defendant, Chris Clark ("Officer Clark"). Plaintiff opposes the motion.[2] For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

According to the facts as alleged in the complaint, plaintiff is "a parking enforcement agent for Boot Man Inc. d/b/a/ Premiere Parking Enforcement."[3] Officer Clark is an officer of the Harbor Police Department of the Port of New Orleans.[4]

Late on May 22, 2014, in the course of his job, plaintiff placed vehicle immobilization devices ("boots") on two vehicles in a parking lot at 1000 Poydras Street in New Orleans.[5] At approximately 11:30 p.m., "Officer Clark, Ms. Clark and her non-party husband, Mr. Clark[6] returned as a group from a celebration at Lucky's Irish Pub" and confronted plaintiff about one of the booted

---

[1] R. Doc. No. 22.
[2] R. Doc. No. 30.
[3] R. Doc. No. 1, ¶ 5.
[4] R. Doc. No. 1, ¶ 6.
[5] R. Doc. No. 1, ¶¶ 14-5, 17-18.
[6] The Court notes that, according to Officer Clark's motion, Mr. and Ms. Clark are his parents. R. Doc. No. 22-1, at 4.

1

vehicles.[7] Plaintiff "explained that he was unable to remove the boot unless the $90.00 removal fee was paid, and that he had to go attend another lot, but was willing to return."[8]

Half an hour later, plaintiff returned to the parking lot to find that the Clarks "had been joined by [co-defendants David] Cantrelle, [John] Herrin, and [Kristine] Alarcon, who had returned from [the] same celebration at Lucky's Irish Pub to find" the other booted vehicle.[9] All of the defendants then present "commenced an altercation with plaintiff" and "implored [him] to ignore his job duties and to remove the boots without payment."[10] Officer Clark "demonstrated his badge of office in making a demand that the boots be removed from both vehicles."[11]

The group "became angry and belligerent," at which point plaintiff, "fearing for his safety . . . elected to leave the scene of the confrontation in order to avoid an altercation."[12] Plaintiff "entered his personal vehicle and prepared to drive away."[13] Defendants "did not permit [plaintiff] to leave" and surrounded his vehicle.[14] Officer Clark and another defendant (Constable David Cantrelle) stood next to Ms. Clark, who "stood next to [plaintiff's] vehicle to prevent him from closing the driver's side door," while "non-party Mr. Clark moved to the back of [plaintiff's] vehicle."[15]

Then the following allegedly occurred:

Derischebourg had placed his vehicle's gear selector into "Drive" prior to the

---

[7] R. Doc. No. 1, ¶ 20.
[8] R. Doc. No. 1, ¶ 20.
[9] R. Doc. No. 1, ¶ 21.
[10] R. Doc. No. 1, ¶ 21.
[11] R. Doc. No. 1, ¶ 22.
[12] R. Doc. No. 1, ¶ 24.
[13] R. Doc. No. 1, ¶ 24.
[14] R. Doc. No. 1, ¶ 25.
[15] R. Doc. No. 1, ¶ 25.

>blocking off of his routes of egress. When he saw that all routes were blocked by defendants, he moved the gear selector back to "Park," passing necessarily through "Reverse." When the selector passed through "Reverse," non-party Mr. Clark pushed away from the vehicle and fell down, wrongly believing that Derischebourg intended to back up. This event triggered Officer Clark and Cantrelle to lay hands upon Derischebourg and forcibly remove him from his vehicle, at which time they threw him on the ground and restrained him. Herrin assisted in holding Derischebourg on the ground. Defendants Officer Clark, Ms. Clark, Herrin, Cantrelle, and Alarcon proceeded to beat Derischebourg about the head and body while he was restrained on the ground. Officer Clark used a choke hold on Derischebourg, while Cantrelle and Herrin restrained him, injuring his neck.[16]

At some point, defendants contacted the New Orleans Police Department and "Ms. Clark advised the NOPD dispatch that two Harbor Police were 'helping' to restrain" plaintiff.[17] NOPD arrived, "at which time Derischebourg was under restraint by Officer Clark, Cantrelle, and Herrin, held face down in the parking lot at 1000 Poydras Street."[18] Plaintiff alleges that the "NOPD officers issued summons" for municipal battery violations and that "charges of false imprisonment were subsequently filed by the City of New Orleans against several defendants."[19] The complaint does not allege precisely who was cited or charged and the outcome of those citations or charges.

Plaintiff filed the above-captioned lawsuit in this Court, alleging a myriad of federal and state-law claims against defendants, including Officer Clark. As relevant to this motion, plaintiff alleges claims against Officer Clark pursuant to 42 U.S.C. §§ 1983, 1981, 1985, and state tort law.

## LAW & ANALYSIS

Officer Clark moves to dismiss all of plaintiff's claims against him on various grounds. The Court will address the arguments in the order presented by the parties.

---

[16]R. Doc. No. 1, ¶ 26.
[17]R. Doc. No. 1, ¶ 27. The other defendant alleged to be a member of the Harbor Police is John Herrin. R. Doc. No. 1, ¶ 7.
[18]R. Doc. No. 1, ¶ 27.
[19]R. Doc. No. 1, ¶ 28.

### A. Standards on Motions to Dismiss

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the U.S. Court of Appeals for the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).[20]

---

[20]Officer Clark's motion also cites but does not meaningfully address Rule 12(b)(1) of the Federal Rules of Civil Procedure, which governs motions to dismiss on the basis of lack of subject matter jurisdiction. R. Doc. No. 22-1, at 4. The only jurisdictional matter raised by Officer Clark is the Court's discretionary exercise of supplemental jurisdiction over plaintiff's state-law claims,

4

**B.      Section 1983 Claims**

Plaintiff characterizes his § 1983 claims as based on "assault and battery," "wrongful seizure of person or false arrest as well as false imprisonment and/or kidnapping," "improper search and seizure of person," and "intentional infliction of emotional distress."[21] The Court construes these allegations as implicating plaintiff's Fourth Amendment right to be free from excessive force and arrest without probable cause, both of which are clearly established rights. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009); *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009).

       **1)      Allegation of Constitutional Violations**

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (quoting 42 U.S.C. § 1983). Officer Clark challenges the sufficiency of plaintiff's allegations only with respect to the "color of law" element of his § 1983 claims.[22]

"A person acts under color of state law if he misuses power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (internal quotation marks and citation omitted). "Under 'color' of law means under 'pretense' of law." *Id.* "Acts of officers performing their official duties are included whether they hew to the line of their authority or overstep it, but acts of officers in the ambit of their personal pursuits are generally excluded." *Id.* "Whether an officer is acting under color of state law does not depend on

---

which will be addressed *infra*.
      [21]R. Doc. No. 1, ¶ 40, 42, 44, 46.
      [22]R. Doc. No. 22-1, at 9-15.

5

his on- or off-duty status at the time of the alleged violation." *Id.* "Rather, the court must consider: (1) whether the officer misused or abused his official power, and (2) if there is a nexus between the victim, the improper conduct, and the officer's performance of official duties." *Id.* at 464-65. "If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law." *Id.* at 465.

Officer Clark argues that his "actions were just that of a son who wanted to protect his father and had no connection to his work with the Harbor Police."[23] In support of that contention he points to indicia of action under color of law that are absent from plaintiff's complaint, such as use of a service weapon, wearing a Harbor Police uniform, or driving a Harbor Police vehicle.[24] He also emphasizes that he only flashed his badge in connection with demanding that the boots be removed from the vehicles, and that he was outside his jurisdiction as a Harbor Police officer.[25]

In response, plaintiff emphasizes his factual allegations that Officer Clark displayed his badge of office, "acted in concert with other defendants to surround plaintiff and prevent him from leaving the confrontation," "forcibly removed plaintiff from his vehicle, threw plaintiff to [the] ground, restrained him, placed him in a choke hold, and otherwise battered plaintiff in the manner of effecting an arrest."[26] Then, after Officer Clark's mother "advised the NOPD dispatch that two Harbor Police were 'helping' to restrain plaintiff," he continued to restrain plaintiff until those officers arrived.[27] The parties analyze the sufficiency of these allegations with reference to three Fifth Circuit cases.

---

[23] R. Doc. No. 22-1, at 11.
[24] R. Doc. No. 22-1, at 12.
[25] R. Doc. No. 22-1, at 13-14.
[26] R. Doc. No. 30, at 5.
[27] R. Doc. No. 30, at 5.

In the first case, *United States v. Tarpley*, a defendant police officer was convicted of crimes which required proof of conduct under color of law. *See* 945 F.2d 806, 807 (5th Cir. 1991). The Fifth Circuit affirmed the conviction, finding sufficient evidence of action under color of law based on evidence that, *inter alia*, the police officer threatened to murder his wife's boyfriend, "inserted his service pistol" in the victim's mouth, and asserted that "he could get away with it because he was a cop." *See* 945 F.2d 806, 808 (5th Cir. 1991).

In the second case, *Bryant v. Military Department of Mississippi*, the Fifth Circuit affirmed summary judgment with respect to a § 1983 claim for failure to show that defendants acted "under color of state law." *See* 597 F.3d 678, 685 (5th Cir. 2010). The plaintiff in *Bryant* alleged that the defendants were military officers who retaliated against him for "whistleblowing" through, "*inter alia*, assault, vandalism, harassing phone calls, trying to get [plaintiff] fired from his civilian job, and firing gun shots near [plaintiff's] home" in order "to protect their military careers." *See id.* at 686. However, the Fifth Circuit held that such "motive alone" was insufficient to establish action under color of law without any facts supporting a finding that the actions "were *achieved* through the use or misuse of power granted by the state." *See id.* at 686-87 (emphasis added).

In the third case, *Bustos v. Martini Club Inc.*, the Fifth Circuit affirmed dismissal pursuant to Rule 12(b)(6) of a plaintiff's § 1983 claim based on an assault by several off-duty police officers. *See* 599 F.3d 458, 460-61 (5th Cir. 2010). The Fifth Circuit found no allegation of action under color of state law because "the allegations contain no suggestion that the officer was misusing his official authority in any manner." *Id.* at 465 ("Simply put, no 'air of authority' pervaded this barroom altercation.").

Plaintiff has alleged specific facts which fall somewhere between *Tarpley* on the one hand,

7

and *Bryant* and *Bustos* on the other hand. According to the complaint, Officer Clark "demonstrated his badge of office in making a demand that the boots be removed from both vehicles."[28] The situation then escalated and plaintiff was restrained and placed in a chokehold by Officer Clark. NOPD officers were then summoned after being notified by Ms. Clark "that two Harbor Police were 'helping' to restrain" plaintiff.[29]

Construing the allegations in their entirety and drawing reasonable inferences in plaintiff's favor, plaintiff has sufficiently alleged that Officer Clark misused his authority as a Harbor Police officer in seizing plaintiff and applying force in violation of plaintiff's constitutional rights. By allegedly flashing his badge at the outset of the encounter to obtain something which a private citizen would not be entitled, i.e., removal of the boot, Officer Clark provided the 'air of authority' [which] pervaded" the subsequent development of the situation that was lacking in *Bustos*. *See* 599 F.3d at 465. Furthermore, the "air of authority" continued as Officer Clark's mother notified NOPD officers that Harbor Police officers were "helping" restrain plaintiff. The complaint is devoid of any factual allegation that Officer Clark disclaimed that invocation of his authority as a Harbor Police offcer on his behalf. Although Officer Clark asserts that this was strictly a personal dispute with plaintiff and that he only "wanted to protect his father," that is an inference in his favor which the Court cannot draw for the purposes of resolving this motion. Although it appears that Officer Clark was outside his jurisdiction as a Harbor Police officer,[30] that is only a non-dispositive factor.

---

[28] R. Doc. No. 1, ¶ 22.
[29] R. Doc. No. 1, ¶ 27.
[30] The jurisdiction of Harbor Police officers is "in and upon the property within the jurisdiction of the board and approaches thereto." La. Rev. Stat. § 34:26. Plaintiff has not alleged, and it does not appear, that this incident in a parking lot on Poydras, occurred within the jurisdiction of the Harbor Police. Nonetheless, action within an officer's jurisdiction is just one factor to be considered. *See Garner v. Wallace*, 139 F. Supp. 2d 801, 804-05 (E.D. Tex. 2001). *Garner* is also

8

Accordingly, the Court concludes that plaintiff has adequately alleged action by Officer Clark under color of law for the purposes of his § 1983 claims.

### 2) Qualified Immunity

Officer Clark also invokes qualified immunity with respect to plaintiff's § 1983 claims. "Once a defendant invokes the qualified immunity defense, the plaintiff carries the burden of demonstrating its inapplicability." *Floyd v. City of Kenner*, 351 F. App'x 890, 893 (5th Cir. 2009) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). "To satisfy the burden, a plaintiff must meet a two-prong test." *Id.* "First, he must claim that the defendants committed a constitutional violation under current law." *Id.* (quoting *Atteberry v. Nocono Gen'l Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)). "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (quoting *Atteberry*, 430 F.3d at 253). The Court can consider either prong first. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

"The second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

---

distinguishable on the facts because the defendant officer in *Garner* "never attempted to make an arrest, and did not threaten or attempt to arrest Garner." *See id.* at 805.

"Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent placed the statutory or constitutional question beyond debate." *Whitley*, 726 F.3d at 638 (internal quotation marks and citations omitted). "Unless *all* reasonable officers in the defendants' circumstance would have known that the conduct in question violated the constitution, the defendant is entitled to qualified immunity." *Batiste v. Theriot*, 458 F. App'x 351, 354 (5th Cir. 2012).

Once qualified immunity has been invoked in a Rule 12(b)(6) motion, the court reviews a plaintiff's claims "guided by both the ordinary pleading standard and by a heightened one." *Floyd v. City of Kenner*, 351 F. App'x 890, 893 (5th Cir. 2009) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc)). "[A] district court may order the plaintiff to submit a reply after evaluating the complaint under the ordinary pleading standard." *Id.* "[M]ore than mere conclusions must be alleged," and "'a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants.'" *Id.* (quoting *Schultea*, 47 F.3d at 1432). "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Id.* (quoting *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)).

Officer Clark's briefing regarding his entitlement to qualified immunity is terse. He contends that his actions were objectively reasonable because he "believed that plaintiff committed a crime by backing into [his] father" and that he "simply ensured that the plaintiff would not leave the parking lot until the police arrived."[31] *See Club Retro*, 568 F.3d at 206 ("Even law enforcement

---

[31]R. Doc. No. 22-1, at 17.

10

officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.") (alterations and internal quotation marks omitted).

Officer Clark's argument depends on details not alleged in the complaint and inferences drawn against plaintiff. The crux of the matter is plaintiff's factual allegation that, because Officer Clark's father blocked his egress to the rear, plaintiff shifted gears through reverse into forward, at which time the father "pushed away from the vehicle and fell down, wrongly believing that Derischebourg intended to back up."[32] Plaintiff specifically alleges that "*[t]his event* triggered Officer Clark and Cantrelle to lay hands upon Derischebourg" and use the force described above.[33] Plaintiff's allegations, taken as true and drawing reasonable inferences in *plaintiff's* favor, do not provide the factual predicate for a reasonable, albeit mistaken, belief by Officer Clark "that plaintiff committed a crime by backing into [Officer] Clark's father."[34]

Parsing the complaint carefully, the factual allegations are that Officer Clark was standing to the side of the vehicle, where it is unclear that he could have seen the reverse lights on plaintiff's vehicle, and that Officer Clark's father was standing behind the car and fell down. The complaint does not allege that plaintiff's vehicle actually moved towards Officer Clark's father, nor does the complaint allege as a factual matter that Officer Clark shared his father's mistaken belief.[35] Accordingly, Officer Clark's motion is predicated on a version of the facts not alleged in the complaint which the Court cannot consider for the purposes of this motion. Rather, the facts alleged in the complaint, construed in plaintiff's favor, establish that in a tense situation instigated by

---

[32] R. Doc. No. 1, ¶ 26.
[33] R. Doc. No. 1, ¶ 26 (emphasis added).
[34] R. Doc. No. 22-1, at 17.
[35] Although such a belief may ultimately prove to be reasonable after discovery, the Court cannot infer such a belief from the allegations of plaintiff's complaint.

defendants, Officer Clark's father fell down and Officer Clark responded unreasonably by pulling plaintiff from his car without a basis for probable cause to believe that plaintiff had committed any crime.

Furthermore, Officer Clark is not entitled to qualified immunity with respect to the allegation that excessive force was used. Plaintiff has alleged facts going well beyond being "merely detained." "[O]fficers must assess not only the need for force, but also the relationship between the need and the amount of force used." *Deville*, 567 F.3d at 167. The Fourth Amendment's protections against excessive force are "clear enough" that an officer cannot "forcefully slam [a plaintiff's] face into a vehicle while she was restrained and subdued." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). The Court finds that Officer Clark is not entitled to qualified immunity as plaintiff alleges that Officer Clark applied a choke hold and beat plaintiff about the head while plaintiff was restrained on the ground.

The cases that Officer Clark cites for the proposition that "[f]ederal courts have found that qualified immunity extends to actions that are far more questionable" do not govern this outcome.[36] First, in *Batiste v. City of Beaumont*, the court did not dismiss the complaint, but rather directed the plaintiff to file a reply with additional details to provide the context in which the alleged "substantial physical force was applied." *See* 421 F. Supp. 2d 969, 983-84 (E. D. Tex. 2005). Here, the Court does not find that more detailed allegations are required to conclude that plaintiff's allegations, if true, defeat a Rule 12 motion based on qualified immunity. Second, *Pace v. Capobianco* is inapposite because that case reviewed the sufficiency of the summary judgment evidence in support of a plaintiff's allegations, not the factual sufficiency of the allegations themselves for the purposes

---

[36]R. Doc. No. 22-1, at 17 & n.49.

of a Rule 12 motion. 283 F.3d 1275, 1276 (11th Cir. 2002) (holding that "insufficient competent evidence exists to support Plaintiff's version of the facts").

Accordingly, Officer Clark's motion to dismiss plaintiff's 42 U.S.C. § 1983 claims pursuant to Rule 12(b)(6) should be denied. Denial of the motion is based solely on the facts alleged in plaintiff's complaint, which are assumed to be true, and the Court does not foreclose the possibility that, upon factual development of the record, Officer Clark may be able to demonstrate his entitlement to summary judgment.

**C.     Sections 1981 and 1985**

Plaintiff also alleges claims pursuant to 42 U.S.C. §§ 1981[37] and 1985.[38] Officer Clark

---

[37](a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

[38](3) Depriving persons of rights or privileges
> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or

contends, and plaintiff does not dispute, that such claims require, *inter alia*, intentional discrimination on the basis of plaintiff's race.[39] *See Dunaway v. Cowboys Nightlife, Inc.*, 436 F. App'x 386, 390 (5th Cir. 2011) (explaining that the element of discrimination which is part of a § 1981 claim may be proved "with either direct or circumstantial evidence"); *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (explaining that a § 1985 conspiracy claim "must also have a racially based animus").

Plaintiff's only allegation arguably related to discrimination on the basis of his race is the factual assertion that he is African-American, which allegation is insufficient by itself to establish these claims.[40] However, plaintiff expressly requests leave to amend his complaint to allege additional factual detail in support of such claims.[41] Accordingly, the motion should be granted with

---

hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.
[39] R. Doc. No. 22-1, at 19, 22-23; R. Doc. No. 30, at 11.
[40] R. Doc. No. 1, ¶ 35.
[41] R. Doc. No. 30, at 11-12. Plaintiff also filed a motion for leave to file an amended complaint, although he did not attach a copy of a proposed amended pleading to that motion. R. Doc. No. 31.

respect to plaintiff's §§ 1981 and 1985 claims with leave to amend. In his amended pleading, plaintiff may attempt to address the factual deficiencies articulated in Officer Clark's motion to dismiss.

### D.     Official Capacity

Plaintiff sued Officer Clark in his individual and official capacities.[42] Officer Clark moves to dismiss the official-capacity claim against him as duplicative of plaintiff's claim against his employer.[43] In his complaint, plaintiff asserted claims against the Harbor Police Department of the Port of New Orleans as Officer Clark's employer.[44] An answer was filed by the Board of Commissioners for the Port of New Orleans, asserting that it was "incorrectly named as the Harbor Police Department of the Port of New Orleans,"[45] and plaintiff has not responded to that assertion.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). This Court has previously dismissed official-capacity claims against officers of an entity which were redundant of other claims in a lawsuit. *See Randall v. Tregre*, 2015 WL 7777981, at *8 (E.D. La. Dec. 2, 2015) (Africk, J.) (dismissing official-capacity claim against individual deputy because plaintiff had also sued sheriff in his official capacity) (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities

---

[42]R. Doc. No. 1, ¶ 6.
[43]R. Doc. No. 22-1, at 23-24.
[44]R. Doc. No. 1, ¶¶ 12, 48.
[45]R. Doc. No. 14, at 1.

15

themselves.")). Although plaintiff asserts that his "claim against Chris Clark in his official capacity concerns [Clark's] own conduct,"[46] plaintiff cites no authorities distinguishing his official-capacity claim against Officer Clark from his claim brought directly against the employing entity. Accordingly, the Court agrees that because an official-capacity claim against Officer Clark is redundant of the claim against the Board of Commissioners for the Port of New Orleans, Officer Clark's motion to dismiss the official-capacity claim against him should be granted.

E.     **State-law Claims**

Officer Clark's motion to dismiss plaintiff's state-law tort claims against him is contingent on complete dismissal of all federal claims and the Court's discretionary decision not to exercise supplemental jurisdiction over those state-law claims.[47] Because the Court has not dismissed all of plaintiff's federal claims, that portion of Officer Clark's motion is also denied.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Clark's motion is **GRANTED** with respect to (1) plaintiff's § 1981 and 1985 claims and (2) plaintiff's official-capacity claim against Clark, which claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Clark's motion is **DENIED** in all other respects.

---

[46] R. Doc. No. 30, at 14.
[47] R. Doc. No. 43, at 7.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to amend the complaint is **GRANTED**. Plaintiff shall file an amended complaint on or before **Wednesday, January 13, 2016**.

New Orleans, Louisiana, January 8, 2016.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**