### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**ALFRED DERISCHEBOURG**                    **CIVIL ACTION**

**VERSUS**                                              **No. 15-1712**

**OFFICER CHRIS CLARK ET AL.**                    **SECTION I**

### ORDER AND REASONS

Before the Court are New Orleans Harbor Police Officer Chris Clark Jr.'s, the Board of Commissioners of the Port of New Orleans's, and Lexington Insurance Company's motions[1] for summary judgment. For the following reasons, Clark Jr.'s motion is denied, the Port's motion is granted in part and denied in part, and Lexington's motion is granted.

### I.

On the night of Clark Jr.'s graduation from college, his family and friends took him out to dinner in New Orleans. Clark Jr.'s family and friends took two cars to the restaurant.

When they went to pay for parking at a parking lot on Poydras Avenue, they did not notice that the parking machine did not give change. As a result, they accidently paid more than they intended for a single parking space. But rather than purchase a parking slip for the other car, they parked both of the cars next to each other in the lot and left the parking slip on the dashboard of *one* of the cars. Clark

---

[1] R. Doc. Nos. 130, 134, 135.

Jr. left his Harbor Police ID on the dashboard of the other car.  Both of the cars were booted when they returned.

Plaintiff Alfred Derischebourg was working as the parking lot's "boot man" that evening.  He booted the cars.  Then, when Clark Jr.'s family called to get the boots removed, Derischebourg was dispatched to address the situation.  After Derischebourg arrived, he explained the rules to Clark Jr. and Clark Jr.'s mother and quoted a price for removing the boots.  They refused to pay, and Derischebourg left.

The Clark family called Derischebourg back to the parking lot later in the evening.  By that point, more of Clark Jr.'s friends and family had gathered.  One of those individuals was David Cantrelle—a badge-toting deputy constable for the First City Constable.

Upon arrival, Derischebourg exited his car and began discussing the matter with Clark Jr.'s mother.  During that conversation, Derischebourg got back in his pickup truck.  Clark Jr.'s friends and family—but not Clark Jr.—surrounded the pickup truck.  Clark Jr.'s aunt and uncle stood in front, Clark's mother and Cantrelle next to the driver's door, and Clark Jr.'s father ("Clark Sr.") behind.

The parties disagree about what happened next.  According to Clark Jr., Derischebourg began to back up "a couple of feet – four or five feet, maybe," in a "fast" and "erratic" manner, R. Doc. No. 175-3, at 38, forcing Clark Jr. and Cantrelle to remove him from the car for the safety of everyone there.  Clark Jr. claims his intervention was provoked by seeing Derischebourg's moving pickup truck hit Chris Clark Sr.  R. Doc. No. 175-3, at 38.  Meanwhile, according to Derischebourg, he merely

shifted his car from drive to park—causing the reversing lights to temporarily go on—but his car did not move.  (Clark Sr. later reported to police that the car did not strike him.  Instead, Clark Sr. said that that he pushed himself away from the vehicle when he saw the reversing lights go on. R. Doc. No. 175-5, at 5.)

Nonetheless, all parties agree that Clark Jr.'s aunt screamed and Cantrelle used force to remove Derischebourg from the car.  Clark Jr. ran over to help Cantrelle restrain Derischebourg.  They pinned Derischebourg to the ground and handcuffed him.  Derischebourg also claims that they punched him and held him down while Derischebourg was assaulted by Clark Jr.'s friends and family.  Derischebourg's body camera recorded video and audio from the incident, though the video camera fell off of Derischebourg when he was removed from the car.  The camera landed face down, resulting in there only being an audio recording of the takedown.

New Orleans police arrived on the scene shortly thereafter.  They ordered Derischebourg released.  After investigating, the police issued summonses to Clark Jr., Cantrelle, as well as some of Clark Jr.'s friends and family for simple assault.

Derischebourg filed this civil case which alleges federal and state tort claims against Clark Jr., the Port of New Orleans (Clark Jr.'s employer), Cantrelle, the First City Constable (Cantrelle's employer), and Clark Jr.'s friends and family.  Derischebourg further amended his case to raise a claim against Lexington Insurance Company (the insurer for Clark Jr.'s aunt and uncle) under the direct action statute.

Derischebourg also filed a criminal complaint against Clark Jr., Cantrelle, and Clark Jr.'s family and friends.  This matter was stayed during the pendency of the

criminal proceedings.  It was then reopened after all of the defendants were found not guilty of all charges in municipal court.

Clark Jr., the Port, and Lexington Insurance Co. now move for summary judgment.

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact.  *See* Fed. R. Civ. P. 56.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a

genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## III.

Clark Jr. moves for summary judgment on (1) his claim of qualified immunity to plaintiff's federal and state constitutional law claims and (2) his claim of discretionary immunity to the state law tort claims. Clark Jr. also moves for summary judgment on the merits of plaintiff's tort claims, but he did not comply with the scheduling order requiring him to discuss all proposed summary judgment issues at a status conference.

## A.

Even though Clark Jr. was off-duty at the time he pinned and cuffed Derischebourg, he is entitled to qualified immunity insofar as his conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Legrand v. Gillman*, 576 F. App'x 334, 335 n.1 (5th Cir. 2014) (off-duty officers may raise qualified immunity defense). When qualified immunity is properly applied, "it protects all but the plainly incompetent or those who knowingly violate the law."

5

*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted). "Once a defendant invokes qualified immunity . . . the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

Courts apply a two-part test when determining qualified immunity. First, a court must decide whether the officer's conduct violated a constitutional right. *See Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Second, the court must decide whether the constitutional right at issue was clearly established at the time of the alleged violation. *Id.* Derischebourg claims that Clark Jr. violated the Fourth Amendment by unlawfully seizing Derischebourg and using excessive force when doing so.

Neither party disputes the constitutional principles underlying Derischbourg's constitutional claims—the Fourth Amendment right to be free from unlawful arrest and detention as well as the Fourth Amendment right to be free from excessive force during a seizure. Because neither party disputes the clarity of the underlying Fourth Amendment rights, both the first and the second prong of the qualified immunity analysis "necessarily involves a reasonableness inquiry." *Id.*

After all, Derischebourg needs to show that Clark Jr. acted unreasonably to demonstrate a Fourth Amendment violation in the first place. *See, e.g.*, *Heien v. North Carolina*, 134 S. Ct. 530, 536 (2014) ("As the text indicates and we have repeatedly affirmed, the ultimate touchstone of the Fourth Amendment is reasonableness." (internal quotation marks omitted)). Then, when determining

whether a constitutional right was clearly established—that is, whether Clark Jr. could have reasonably believed that his "conduct was not barred by law," *Heaney*, 846 F.3d at 801—Derischebourg again has to demonstrate that Clark Jr.'s actions were unreasonable.

In each instance, the reasonableness inquiry is "an objective one." *Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994) (Wilkinson, J.); *see e.g.*, *Harlow*, 457 U.S. at 818 (qualified immunity inquiry examines "objective reasonableness of an official's conduct"); *McCreary*, 738 F.3d at 657 ("Fourth Amendment compliance is, as a general rule, assessed based on objective reasonableness and not subjective intent."). "To gauge objective reasonableness, a court examines only the actions at issue and measures them against what a reasonable police officer would do under the circumstances." *Rowland*, 41 F.3d at 172. "The relevant question . . . is whether a reasonable officer could have believed" his actions "to be lawful" under the Fourth Amendment "in light of clearly established law and the information the . . . officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

In light of the central role that reasonableness plays in the qualified immunity inquiry, Clark Jr. focuses on the argument that his reaction was reasonable in light of the information he had at the time. Clark Jr. suggests that he had a reasonable belief that Derischebourg's conduct "posed a threat to the safety of the individuals in the parking lot unless he was restrained." R. Doc. No. 135-2, at 4.[2]

---

[2] Focusing on Clark Jr.'s subjective understanding of what happened—as Clark Jr. seems to suggest at times notwithstanding his quotation of the proper standard—is the wrong inquiry. Even if Clark Jr. really thought he saw the car move, that fact

Clark Jr.'s argument requires the Court to credit Clark Jr.'s account that he *saw* the car erratically move "*four or five feet*" and hit his father, R. Doc. No. 175-3, at 38, rather than Derischebourg's account that the car did not move, R. Doc. No. 175-2, at 163.  However, this Court cannot simply find Clark Jr.'s account more credible than Derischebourg's on a motion for summary judgment.  *See, e.g.*, *Payne v. City of Olive Branch*, 130 F. App'x 656, 660-61 (5th Cir. 2005).   And there is such a significant disparity between Clark Jr.'s account that he observed the car move a number of feet in an *erratic* fashion and hit his father, and Derischebourg's account that the car did not move at all, that this Court cannot simply treat both versions of the facts as consistent accounts of the same situation.  *Cf. id.* at 660-61 (explaining how disputed testimony on a key factual issue related to qualified immunity creates a fact issue for the jury).

On a summary judgment motion, this Court must credit Derischebourg's account that the car did not move when reviewing the paper record.  *See, e.g.*, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant . . . .").  Moreover, having

---

alone does not guarantee him qualified immunity.  *See, e.g.*, *Arshad ex rel. Arshad v. Congemi,* No. 08-30061, 2009 WL 585633, at *4 (5th Cir. 2009) ("The subjective beliefs of [the officers] as to what facts they relied upon in forming the probable cause to arrest ... are irrelevant to the objective reasonableness of their actions." (alterations in original)).  Rather where, as here, a defendant puts his mental understanding of the event at issue, the Court must reconstruct the factual record and determine whether a reasonable officer in Clark Jr.'s position could have perceived a similar risk justifying a particular seizure or use of force.  *See Alford v. Cumberland Cnty.*, No. 06-1569, 2007 WL 2985297, at *4 (4th Cir. 2007).

reviewed the video and audio footage,[3] the Court concludes that the footage is not sufficiently clear to permit this Court to disregard Derichebourg's account of the incident.  *See Ramirez v. Martinez*, 716 F.3d 369, 374-75 (5th Cir. 2013).  Accordingly, the Court concludes that Derischebourg has demonstrated a genuine dispute of material fact as to whether Derischebourg's car moved at all.

That dispute is material insofar as the reasonableness of Clark Jr.'s conduct turns significantly on whether Derischebourg did, in fact, back up four or five feet in an erratic fashion.[4]  If Derischebourg's car did not move, then a reasonable fact-finder could determine that it was manifestly unreasonable for an officer in Clark Jr.'s position to mistakenly draw the conclusion the car moved four or five feet.  Likewise, if Derischebourg's car did not move or if Clark Jr. unreasonably determined that the car moved, then it violated clearly established constitutional law for Cantrelle to pull him from the car and for Clark Jr. and Cantrelle to wrestle Derischebourg to the ground and pin him while Derischebourg was attacked by Clark Jr.'s friends and family.

---

[3] Clark Jr. objects that Derischebourg's opposition did not properly authenticate the video.  In response, Derischebourg submitted a sur-reply with an affidavit from Derischebourg, R. Doc. No. 182-1, that the Court concludes creates a prima facie case that the "video was a fair and accurate depiction of the events."  *United States v. Cejas*, 761 F.3d 717, 724-25 (7th Cir. 2014).  Clark Jr. does not raise any arguments calling into question the accuracy of the video.  Accordingly, the Court considers the body camera footage to be sufficiently authenticated, and considers it for the purpose of resolving the summary judgment motions.  However, the Court also notes that it would reach the same result regardless of whether it considered the footage.

[4] The Court does not hold that the movement of the car is the only relevant question to the issue of qualified immunity; it is simply *a* genuine dispute of material fact that prevents the grant of summary judgment.

9

A "warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Shifting gears from drive to park is neither criminal conduct nor does it create a dangerous situation. And unlike many of the traffic stop cases, Clark Jr. neither points to any other laws that Derischebourg violated nor does Clark Jr. establish that Derischebourg was trying to avoid arrest. If all Derischebourg did was shift his car from drive to park with his foot on the break, all reasonable officers would know that it was clearly unconstitutional to remove Derischebourg from the car, pin him to the ground, handcuff him, and detain him until the police arrived because there would be no justification for doing so whatsoever.

The same conclusion applies to Derischebourg's excessive force claim. To establish a Fourth Amendment excessive force claim, Derischebourg must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and that (3) the force used was objectively unreasonable." *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013). Again, leaving aside that pinning an arrestee down so that he can be assaulted by the officer's friends and family is likely *never* constitutional, if Derischebourg did not back up his car in an erratic manner, then every reasonable officer would also know that it clearly unconstitutional to—as Derischebourg alleges—pin him down, handcuff him, and choke him while he was punched and kicked by Clark Jr.'s friends and family. *See* R. Doc. No. 175-2, at 53-54, 64-66, 68-70, 75, 150, 173-75, 206, 211. If there was not

an objectively reasonable justification to arrest Derischebourg, then it largely follows that it was not objectively reasonable to violently arrest him.

Accordingly, a jury needs to first resolve the relevant disputes of fact before this Court can resolve the question of qualified immunity. *See Heaney*, 846 F.3d at 802 n.3 ("[W]hen qualified immunity depends on disputed issues of fact, those issues must be determined by the jury."). The Court denies Clark Jr.'s motion for summary judgment regarding qualified immunity on Derischebourg's § 1983 claims. Further, as Clark Jr. concedes that the qualified immunity analysis on Derischebourg's state constitutional law claims rises and falls with the qualified immunity analysis on the § 1983 claims, R. Doc. No. 135-2, at 6, 20, this Court also denies the motion for summary judgment regarding qualified immunity on the state constitutional claims.

## B.

Clark Jr. next moves for summary judgment with respect to his claim of discretionary immunity on Derischebourg's state law tort claims. Clark Jr. bases his request on La. R.S. 9:2798.1(B), which provides

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

As with the request for qualified immunity, however, the request for discretionary immunity cannot overcome the summary judgment standard.

In particular, discretionary immunity is not available under Louisiana law for "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La. R.S. 9:2798.1(C)(2). This

Court has to credit Derischebourg's account of being assaulted and battered without provocation when considering a summary judgment motion.  Regardless of whether this Court characterizes Clark Jr.'s supposed assault and battery as criminal behavior or intentionally tortious behavior, discretionary immunity is not available. *See, e.g.*, *Williams v. Champagne*, 13 F. Supp. 3d 624, 635 (E.D. La. 2014); *Sahota v. Cobb*, No. 14-2722, 2015 WL 6835480, at *4 (W.D. La. 2015).  Clark Jr.'s motion for summary judgment on discretionary immunity is therefore denied.

### C.

Finally, Clark Jr. moves for summary judgment on (1) the tort claims because Clark Jr. acted reasonably and (2) the intentional infliction of emotional distress claim and the false imprisonment claim because Derischebourg cannot establish each of the elements of the torts. However, this Court's scheduling order required the movant to discuss proposed summary judgment issues with the Court before filing a motion for summary judgment.  R. Doc. No. 82, at 2.  This Court has long found parties to often be more reasonable in person than on paper.  Accordingly, this Section's rules require such a conference because they conserve the resources of both the parties and the Court by (1) decreasing both frivolous motions and frivolous oppositions; (2) narrowing the relevant issues; and (3) avoiding Rule 56(d) denials.

Clark Jr. did not raise his final issues at the multiple summary judgment conferences the Court held in this matter.  *See* R. Doc. No. 109 (discussing qualified immunity); R. Doc. No. 128 (discussing state law immunity).  Clark Jr.'s summary

judgment motion will therefore be dismissed without prejudice for failure to comply with the scheduling order.  *See* R. Doc. No. 82, at 2; Fed. R. Civ. P. 16(f).[5]

## IV.

The Port of New Orleans moves for summary judgment on all of Derischebourg's claims against the Port.  The Court determines that summary judgment is proper on the Section 1983 claims, but denies summary judgment on the state law claims.

## A.

The Port of New Orleans first moves for summary judgment on Derischebourg's Section 1983 claims.  The Port argues that Derischebourg cannot establish the prerequisites to a valid *Monell* claim.[6]

In an attempt to avoid *Monell*, Derischebourg argues that the Port is a state agency and that the Port therefore cannot raise *Monell*.  R. Doc. No. 174, at 8 ("[P]laintiff respectfully contends that the Port of New Orleans is not a municipality, but is rather an agency of the State of Louisiana.").  However, to the extent that Derischebourg is right that the Port is a state agency not subject to *Monell—i.e.*, a state agency that has immunity from suit under the Eleventh Amendment—any such state agency is not a "person" that can be sued under Section 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989)*; see also Lumpkins v. Office of*

---

[5] Clark Jr. may, of course, request relief under Federal Rule of Civil Procedure 50(a) if warranted.

[6] The Court granted permission for the Port's summary judgment motion at the October 19, 2016 status conference.  *See* R. Doc. No. 100.

*Community Development*, 621 F. App'x 264, 268 (5th Cir. 2015) ("State agencies and state officials acting in their official capacities are not 'persons' within the meaning of the statute.").

After the Court pointed out to Derischebourg the potential implications of his argument, Derischebourg withdrew his argument that the claims against the Port of New Orleans did not have to satisfy *Monell*.   R. Doc. No 185.   On that point, Derischebourg is correct.   Though the Port of New Orleans is a state agency, *see United States v. Ex-USS Cabot/Dedalo*, 297 F.3d 378, 379 (5th Cir. 2002) (observing that the "Board of Commissioners of the Port of New Orleans" is "a state agency"), it does not have Eleventh Amendment immunity from suit, *see Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 440 (5th Cir. 1985) ("[O]ur holding was the equivalent of a finding that the Dock Board had no Eleventh Amendment immunity.").[7]  As such, *Will*'s holding does not apply, *see Will*, 491 U.S. at 70 ("[O]ur holding here . . . applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes."), and *Monell* governs, *see* 436 U.S. 658, 690 n.54 (1978) ("Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes."). Nonetheless, Derischebourg cannot survive the Port's motion for summary judgment.

To succeed on his Section 1983 failure-to-train claim, Derischebourg would need to show "(1) the municipality's training policy or procedure was inadequate; (2)

---

[7] *But see Pierre v. Bd. Of Comm'r of the Port of New Orleans*, No. 92-2607, 1993 WL 54397, at *2 (E.D. La. 1993) (finding "for Eleventh Amendment purposes," the Board of Commissioners to be "an arm of the state").

the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). But, at best, Derischebourg establishes that Clark Jr. did not understand his training or that training could perhaps be done more often. *See* R. Doc. No. 174, at 15-16. That does not create a genuine dispute of material fact as to whether the Port was *deliberately* indifferent in adopting its training program, particularly given that the Port introduced unrebutted evidence that the Port knew that Clark Jr. had already been trained as an officer by a certified police academy, R. Doc. No. 174-4, at 12; R. Doc. No. 174-4, at 20 (noting Gretna Police Academy was certified), and that the Port had its own supplemental training program, R. Doc. No. 174-4, at 10-14. *See Smith v. Carruth*, No. 15-4570, 2017 WL 785345, at *5 (E.D. La. 2017) ("Merely showing that additional training would have been helpful or that the injury could have been avoided if the employee had better or more training is insufficient." (internal quotation marks omitted)); *cf. Connick v. Thompson*, 563 U.S. 51, 62 (2011) (cautioning that "[a] less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities" (internal quotation marks omitted)). Therefore, the Port's motion for summary judgment on the Section 1983 failure to train claim will be granted.

Derischebourg's failure to supervise claim likewise fails. To succeed on a failure to supervise claim, Derischebourg needs to show "(1) the supervisor failed to supervise the subordinate official; (2) a causal link exists between the failure to

supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference." *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (internal quotation marks omitted). "Proof of more than a single instance of the . . . supervision causing a violation of constitutional rights is normally required before such lack of . . . supervision constitutes deliberate indifference." *Id.* (internal quotation marks omitted).

Derischebourg does not demonstrate a pattern of misconduct or violations by Clark Jr. to which the Port was deliberately indifferent.[8]   Likewise, Derischebourg does not establish that Clark Jr. had any known proclivities to recklessness or violence. *See Hobart v. Estrada*, 582 F. App'x 348, 358 (5th Cir. 2014) (explaining "application of the single incident exception requires evidence of the proclivities of the particular officer involved in the excessive use of force"). Therefore, summary judgment is proper on the failure to supervise claim. *See, e.g.*, *id.*; *Livezey*, 657 F. App'x at 278

---

[8] Indeed, though not necessary to the Court's opinion, the Court observes that Derischebourg does not even demonstrate a pattern of misconduct by *any member* of the Harbor Police.  The Port introduced evidence that it had received no other use of force complaints since at least 2009. *See* R. Doc. No. 134-4, at 68-69.  Derischebourg offers no competent summary judgment evidence in response.  Instead, Derischebourg attempts to imply that the Port's statistics may not be entirely accurate, R. Doc. 174, at 16-17, but such speculation that there could potentially be contravening evidence does not create a genuine dispute of material fact, *see Am. Gen. Life Ins. Co. v. Bryan*, 538 F. App'x 516, 519 (5th Cir. 2013) ("[M]ere speculation . . . does not constitute controverting evidence . . . . At the summary judgment stage, the non-moving party may not rest upon the mere allegations or denials of his pleading, but rather must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted)).

**B.**

The Port also moves to dismiss the state law claims.  Under Louisiana law, the Port may have vicarious liability for actions Clark Jr. takes within the course and scope of his employment.  *See* La. Civ. Code art. 2320 ("Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.").

Whether an action is taken within the course and scope of employment is a mixed question of law and fact.  *See Russell v. Noullet*, 721 So. 2d 868, 871 (La. 1999). Courts apply a four-factor test when determining whether an action is taken within the course and scope of employment: "(1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment."  *Smith*, 2017 WL 785345, at *11.  Derischebourg need not establish all four factors to demonstrate that a tort occurred within Clark Jr.'s course and scope of employment.  *See Barrios-Barrios v. Clipps*, 825 F. Supp. 2d 730, 741 (E.D. La. 2011).

Derischebourg can withstand the Port's motion for summary judgment.  In particular, even though all parties admit that Clark Jr. was formally off-duty when he detained Derischebourg, the Court concludes that a reasonable fact-finder could conclude that Clark Jr.'s exercise of his power to arrest occurred within the course and scope of his employment.  As Judge Vance has explained,

> [T]he authority to make arrests is an integral police function that imbues the officer with a public trust. At the same time, this tremendous power

carries the concomitant risk of abuse. That risk, in a context where an officer uses the power and authority of his position as a police officer to . . . subdue a victim, is a risk of harm that a jury could find attributable to the officer's employer, which cloaked him with that apparent authority.

*Smith*, 2017 WL 785345, at *11. Therefore, the Court will deny the Port's motion for summary judgment on the state law claims.[9]

## V.

The final summary judgment issue concerns Derischebourg's claim against Lexington Insurance Co. under the direct action statute. *See* La. R.S. 22:1269. At issue is a homeowner's policy that Lexington issued to Clark Jr.'s aunt and uncle. The complaint alleges that the aunt and uncle—John Herrin and Kristine Alarcon—participated in the assault in the parking lot. Derischebourg argues that there is coverage under the policy for the assault, and therefore that he has a claim under the direct action statute against Lexington.

Lexington argues that Derischebourg cannot recover under the direct action statute because the policy at issue contains an applicable coverage exclusion. There are two intentional acts exclusions in the policy. One version of the intentional acts exclusion is a narrower, Louisiana specific version of the exclusion; the other is a broader, special provisions exclusion contained in an endorsement later in the policy.

---

[9] The Port initially asserted that it was entitled to qualified immunity with respect to Derischebourg's state constitutional law claims. R. Doc. No. 134-1, at 13. However, the Port later abandoned the argument and admitted that "local governments and political subdivisions are not entitled to invoke qualified immunity." R. Doc. No. 184, at 1; *see also Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) ("Louisiana applies qualified immunity principles to state constitutional law claims based on the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983." (internal alterations and quotation marks omitted)).

The parties dispute which version of the exclusion is controlling.  However, the Court need not resolve that dispute because both versions of the exclusion block coverage for the intentional acts alleged in the complaint.

The narrower, Louisiana-specific version of the exclusion precludes coverage for a loss

> (1) Which is expected or intended by one or more "insureds" even if the "bodily injury" or "property damage":
>
> > (i) Is of a different kind, quality, or degree than initially expected or intended; or
> > (ii) Is sustained by a different person, entity, real or personal property, than initially expected or intended.
>
> *However, this Exclusion **1.b.(1)** does not apply to "bodily injury" resulting from the use of reasonable force by one or more "insureds" to protect persons or property.*

R. Doc. No. 130-4, at 39 (emphasis added). The broader, special provisions version of the intentional acts exclusion blocks coverage for more conduct because it does not include a similar carve-out indicating that the exclusion does not apply to intentional uses of reasonable force in self-defense to protect persons or property:

Coverages **E** and **F** do not apply to the following:

**1.  Expected or Intended Injury**

"Bodily injury" or "property damage" which is reasonably expected or intended from the standpoint of the "insured" even if the resulting "bodily injury" or "property damage":

> a. Is of a different kind, quality or degree than initially expected or intended; or
> b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

The reasonable person standard applies even if the "insured" lacked the mental capacity to formulate an intent or expectation.

R. Doc. No. 130-4, at 64.

Lexington argues that, regardless of which exclusion applies, both preclude coverage because the complaint seeks to recover for intentionally tortious conduct. The Court agrees.

Both versions of the exclusion preclude coverage for the injuries allegedly caused by the claimed intentional assault by Clark Jr.'s aunt and uncle. Accordingly, even though the complaint has a passing reference to La. Civ. Code art. 2315, which permits recovery in negligence actions, R. Doc. No. 93, at 13, the exclusion nonetheless applies. *See, e.g.*, *Prestenback v. Badeaux*, 865 So. 2d 180, 183 (La. Ct. App. 5th Cir. 2003) (intentional acts exclusion applies because "the petition filed by Badeaux against the Prestenbachs clearly alleges intentional, and not negligent acts, despite the use of the word negligent in the petition"); *see also New Orleans Deli & Dining, LLC v. Continental Cas. Co.*, No. 10-4642, 2011 WL 4551165, at *4 (E.D. La. 2011) ("The alleged acts . . . were done intentionally, not accidentally nor negligently. Thus, plaintiffs' claims do not sound in negligence, but rather the intentional tort, and intentional acts are excluded by the policy.").

Derischebourg's and the Port's counterargument fail to persuade.

First, Derischebourg points to the claims by the insured (Clark Jr.'s aunt and uncle) that they acted in self-defense. *See* R. Doc. No. 131, at 5. Derischebourg therefore suggests that the narrower version of the intentional acts exclusion would not preclude coverage if Clark Jr.'s aunt and uncle acted in reasonable self-defense. That argument is self-defeating.

Derischebourg is proceeding against Lexington via the direct action statute. Therefore, to recover, he must first establish that the insured committed a tort against him. *Cf.* R. Doc. No. 171, at 3 (Derischebourg admitting that "it is extremely unlikely that plaintiff can recover against Lexington if he is unable to impose liability on" the insured). But if Clark Jr.'s aunt and uncle used reasonable force in self-defense, they face no tort liability to Derischebourg. *See Landry v. Bellanger*, 851 So. 2d 943, 954-56 (La. 2003) (self-defense is a "true defense in that it operates as a privilege to committing the intentional tort"). Accordingly, Derischebourg cannot dodge the intentional acts exclusion by arguing that it would not apply if the insured can establish an affirmative defense to liability.

Second, both the Port and Derischebourg rely on *Breland v. Schilling* to suggest that summary judgment is inappropriate because an intentional act may be accidental if the degree of injury that is caused by the insured's actions is unintentionally severe. *See* 550 So. 2d 609, 613-14 (La. 1989). However, the applicability of *Breland*'s interpretation of what constitutes an intentional act turns on the policy language at issue. Thus, the *Breland* rule is inapplicable when the insurance policy specifies that the insurer "did not agree to cover any bodily injury which resulted from the intended or reasonably expected criminal acts of the tortfeasor/insured, regardless of the degree of injury intended or expected." *King v. Galloway*, 828 So. 2d 49, 53 (La. Ct. App. 4th Cir. 2002).

Here, both versions of the intentional acts exclusion make plain that Lexington did not agree to cover any intentional acts regardless of whether the resulting injury

"is of a different kind, quality, or degree than initially expected or intended." R. Doc. No. 130-4, at 39; R. Doc. No. 130-4, at 64.   Therefore, *Breland* is inapplicable based on the plain text of the exclusions, and summary judgment is properly granted in favor of Lexington.

**VI.**

Accordingly,

**IT IS ORDERED** that Chris Clark Jr.'s motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that the Board of Commissioners of the Port of New Orleans's summary judgment motion is **GRANTED IN PART.** Derischebourg's Section 1983 claim against the Port is **DISMISSED WITH PREJUDICE.** The remainder of the Port's summary judgment motion is **DENIED.**

**IT IS FURTHER ORDERED** that Lexington Insurance Company's motion for summary judgment is **GRANTED** and that all claims against Lexington are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 22, 2017.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**